UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN YEAGER,** | : | Case No.  1:14-cv-890 |
| Appellant, | : | Judge Michael R. Barrett |
| v. | : | |
| **NICHOLAS WILMERS,** | : | |
| Appellee. | : | |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the bankruptcy appeal of Appellant John Yeager.  On July 28, 2015, Appellant filed his brief in support of the appeal (Doc. 6),[1] and on August 13, 2015, Appellee Nicholas Wilmers filed a response brief (Doc. 8).  The deadline for Appellant to file a reply brief has passed and no reply brief has been filed.  Accordingly, this matter is ripe for review.

**I.     <u>BACKGROUND</u>**[2]

This bankruptcy appeal stems from an adversary proceeding in the bankruptcy of Appellant John Yeager.  Appellee Nicholas Wilmers initiated the adversary proceeding against Yeager.  Wilmers sought to recover $420,000.00 from Yeager under the theory the debt stemming from judgment entered in the Hamilton County Court of Common Pleas against Yeager based upon injuries sustained by Wilmers during an altercation was non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).  The bankruptcy court agreed with Wilmers that

---

[1] Appellee filed a *pro se* motion to dismiss based upon the timeliness of the filing, which this Court has contemporaneously denied.

[2] The record includes (1) the docket sheet from the Adversary Proceeding in the U.S. Bankruptcy Court for the Southern District of Ohio, Adversary Proceeding No. 1:12-ap-01079; (2) the bankruptcy court's October 3, 2012 Decision Finding Debt Nondischargeable Pursuant to 11 U.S.C. § 523(a)(6); and (3) the bankruptcy court's October 3, 2014 Judgment Entry.  (Doc. 1-2).

the debt was non-dischargeable in bankruptcy pursuant to § 523(a)(6) because Yeager's act was willful and malicious.

In reaching its conclusion, the bankruptcy court "recognized that the state court judgment was binding on [the bankruptcy court] with respect to the debtor's liability to the plaintiff for battery and the amount of damages awarded." (Doc. 1-2, PageId 9). The bankruptcy court set forth the following factual findings of the state court:

1.    Plaintiff, Nick Wilmers, at the time of the incident which led to this litigation, December 31, 2003, was a patron at an establishment, known as the East End Café.

2.    Defendant, John Yeager, was, at the time, the proprietor and owner of the East End Café.

3.    Plaintiff, his girlfriend, Ashley Larnard, and several male and female friends met on the evening in question at Ms. Larnard's apartment and began drinking and otherwise socializing.

4.    The group then commissioned a taxi cab to transport them to the East End Café, where they continued drinking and socializing in preparation for the new year.

5.    As closing time approached, sometime after the new year commenced, the group decided to leave the East End Café, which was crowded with patrons.

6.    The café has a covered foyer as one enters from the sidewalk; the foyer, which has two outward-swinging gates, separates the building proper from the sidewalk. The building itself has two entry/exit doors, which also swing in an outward direction.

7.    What happened at the entrance to the café is the subject of this lawsuit and is much in dispute. Plaintiff and his witnesses, Sam Mudd and Bo Gerth, testified that Plaintiff was struck from behind by the outward swinging gate, as he stood facing the street, by Defendant Yeager. Plaintiff was, according to them, then pushed twice, the second push resulting in a fall backwards and the Defendant grabbing Plaintiff as they both fell to the ground. The injury to Plaintiff's left knee occurred as the two hit the ground. The Defendant's version is that he became angry when Plaintiff's girlfriend, Ashley, attempted to steal two bottles of "Apple Pucker." While yelling at Ashley, according to Defendant, Plaintiff came to her rescue, punched Defendant in the eye and

pulled him to the ground such that Defendant was on the ground with Plaintiff on top of Defendant.

8.     The Court finds the more likely scenario to be as described by Plaintiff, although the Court finds it unlikely that Plaintiff said nothing to Defendant prior to Defendant's initial push.  A preponderance of the evidence on the liability issue was established by the testimony of Plaintiff and his two witnesses, none of which has any character blemishes.  On the other hand, Defendant admitted to two offenses involving dishonesty and his sole witness, Katie McGrady, who really didn't observe the altercation at its inception, was accused of theft by the Defendant himself.  Thus, on balance, the credibility issue belongs to the Plaintiff.

9.     Plaintiff sustained a severe injury to his left knee and was transported via ambulance to the hospital, where his dislocated leg was set under general anesthesia.

(Doc. 1-2, PageId 10-11).  It also set forth the following conclusions of law of the state court:

13.     Plaintiff was the sole victim of a battery, inflicted by Defendant, John Yeager.

14.  The sole cause of the injury to Plaintiff's left leg was the battery inflicted by Defendant[.]

(Doc. 1-2, PageId 11).

However, the bankruptcy court further determined that "the state court judgment was not entitled to preclusive effect on the elements of nondischargeability at issue in this case."  (Doc. 1-2, PageId 9).  The bankruptcy court therefore held a trial on July 24, 2014 to determine whether the judgment awarded by the state court is excepted from discharge pursuant to § 523(a)(6).  (Id.).  Upon review and consideration, the bankruptcy court found the debt to be non-dischargeable.  (Id.).  In so holding, the bankruptcy court noted that it heard conflicting testimony from Wilmers and Yeager about the incident in question.  It then stated: "Critical to this Court's determination is the fact that both [Yeager's] and [Wilmers's] testimony indicate that [Yeager] had at least three contacts with [Wilmers]:  one push with the iron-gated door, one shove, and a third contact that was sufficiently forceful to knock [Wilmers] to the ground."

3

(Doc. 1-2, PageId 14-15). "Also critical to this Court's determination is that all three of these contacts took place outside the café proper and, importantly, the last two contacts took place beyond the iron-gated doors and on the sidewalk." (Id., PageId 15). Specifically, the bankruptcy court determined that the action was willful based on the number of contacts, the forcefulness of the contacts, and the fact that the last two contacts took place outside the café's vestibule and on the sidewalk. (Id., PageId 15). It determined the action was malicious, noting there was no credible evidence that mitigating factors such as self-defense, mutual combat, or provocation were present in the case. (Id., PageId 16).

## II.    <u>LEGAL STANDARDS</u>

### A.  <u>Standard of Review</u>

This court has appellate jurisdiction under 28 U.S.C. § 158. The court reviews the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Ellman v. Baker (In re Baker)*, 791 F.3d 677, 680 (6th Cir. 2015); *Grant, Konvalinka & Harrison, P.C. v. Still*, 737 F.3d 1034, 1307 (6th Cir. 2013). "A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rembert v. AT&T Universal Card Servs., Inc.*, 141 F.3d 277, 280 (6th Cir. 1998).

### B.  <u>11 U.S.C. § 523(a)(6)</u>

Discharge exceptions are narrowly construed in favor of the debtor. *Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 504 (6th Cir. 2008) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999)). The creditor has the burden of proving by a preponderance of the evidence that a discharge exception applies. *Id.*

4

The discharge exception at issue here is set forth in 11 U.S.C. § 523(a)(6). Pursuant to § 523(a)(6), a debt is not dischargeable in bankruptcy if it is one for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). "Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *S. Atl. Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) (citations omitted).

A "willful" injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Greiger*, 523 U.S. 57, 61 (1998). That means that a court must find that "the debtor intended his actions, *and* the debtor either intended his actions to cause injury to the creditor or the debtor believed that injury to the creditor was substantially certain to follow." *Tomlin v. Crownover (In re Crownover)*, 417 B.R. 45, 57 (Bankr. E.D. Tenn. 2009) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464-65 (6th Cir. 1999)). A court may consider circumstantial evidence in determining what the debtor may actually have known when taking the action that produced the injury. *In re Lupo*, 353 B.R. at 550 (citing *Jett v. Sircoff (In re Sircoff)*, 401 F.3d 1101, 1106 (9th Cir. 2005)).

The term "malicious" means the action was taken "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (internal quotation marks omitted)). "[T]he definition of malice requires a heightened level of culpability transcending mere willfulness." *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 442 (Bankr. N.D. Ohio 2004). In the context of a physical altercation, courts consider whether claims of self-defense, mutual

combat or provocation affect whether a debtor had just cause or excuse for inflicting an injury. *See generally* James Lockhart Annotation, *Claim or Judgment Based on Assault and Battery Other Than Aggravated or Felonious Assault and Battery or Assault or Battery Using Deadly Weapon as Liability for Willful and Malicious Injury Within § 523(a)(6) of Bankruptcy Act (11 U.S.C.A. § 523(a)(6)) and Predecessor Statute, Barring Discharge of Such Liability*, 28 A.L.R. Fed. 2d 179 (2014).[3]

## III.     ANALYSIS

Yeager raises three overarching issues on appeal, which are addressed below.

### A.  First Issue on Appeal

Yeager contends that the bankruptcy court's determination regarding his mental intent exceeds the findings of the state court because the bankruptcy court conducted a de novo trial on the underlying facts in which it heard and accepted testimony that conflicted with the facts accepted by the state court in determining liability.  (Doc. 6, PageId 32-33).  This Court disagrees.

First, despite Yeager's suggestion otherwise, the bankruptcy court did not err by refusing to apply the doctrine of collateral estoppel.  Collateral estoppel under Ohio law applies when there is (1) "'[a] final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;'" (2) "'[t]he issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;'" (3) "'[t]he issue in the present suit must have been identical to the issue in the prior suit;'" and (4) the party against whom estoppel is sought must have been "'a party or in privity with the party to the prior action.'"  *Sill v. Sweeney*, 276 B.R. 186, 198 (B.A.P. 6th Cir. 2002) (quoting *Gonzalez v. Moffitt (In re Moffitt)*,

---

[3] These standards are virtually identical to those which were correctly articulated by the bankruptcy court in its decision.  (Doc. 1-2, PageId 12-13).

6

252 B.R. 916, 921 (B.A.P. 6th Cir. 2000)); *see also Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 505 (6th Cir. 2008) (citing *Sill,* 276 B.R. at 189). The issue before the state court was whether Yeager could be held liable for battery. The elements of battery under Ohio law are: (1) the intent to cause harmful or offensive contact, and (2) resulting harmful or offensive contact. *Love v. Port Clinton*, 37 Ohio St. 3d 98, 99 (1998). As the bankruptcy court held, it is not clearly the same standard as whether the contact was willful and malicious under § 523(a)(6). As such, the issue of Yeager's intentions in this matter is not identical to the issue of his intentions under the state court battery claim and the issue of his intentions under § 523(a)(6) was not actually and directly litigated in the state court and was not necessarily required for the final judgment in the state court.

Second, contrary to Yeager's contention, the bankruptcy court's factual findings as to the number and nature of the contacts do not conflict with the state court's factual findings. Consistent with the state court's findings, the bankruptcy court indicated that there were three contacts, and the third contact by Yeager caused Wilmers to fall to the ground. (*Compare* Doc. 1-2, PageId 11 *with* Doc. 1-2, PageId 14-15).[4] While Yeager suggests that the bankruptcy court ignored the state court's determination that *Wilmers* grabbed *Yeager* as they fell to the ground, the state court's factual findings reflect the opposite: "Plaintiff [Wilmers] was . . . then pushed twice, the second push resulting in a fall backwards and the *Defendant [Yeager]* grabbing *Plaintiff [Wilmers]* as they both fell to the ground." (Doc. 1-2, PageId 11) (emphasis added). Further, the bankruptcy court's primary focus was on the location of the second and third contact as well as the fact that Yeager's third contact with Wilmers was forceful enough to knock

---

[4] The state court found it more likely that Wilmers was "struck from behind by the outward swinging gate, as he stood facing the street" and then was "pushed twice, the second push resulting in a fall backwards and Defendant grabbing Plaintiff as they both fell to the ground." (Doc. 1-2, PageId 11). Similarly, the bankruptcy court found "at least three contacts," which included "one push with the iron-gated door, one shove, and a third contact that was sufficiently forceful to knock [Wilmers] to the ground." (Doc. 1-2, PageId 14-15).

Wilmers to the ground. All of those facts are consistent with the state court's factual findings and any additional information was properly obtained through the trial. The bankruptcy court thus did not commit clear error in this respect.

Third, the Court disagrees that the bankruptcy court exceeded its authority either by not crediting two findings of the state court in its determination as to "mutual combat" or "provocation" or by hearing additional testimony to clarify those two findings. Contrary to Yeager's argument, the state court's finding that Wilmers and Yeager had "fallen together" is not a plain indication of mutual combat when considered in context. As the state court recognized, it was *Yeager's* third contact with Wilmers that caused Wilmers to fall and, as pointed out above, the state court's determination reflects that it was Yeager who grabbed Wilmers at the time of the fall. Yeager has not pointed to anything in the state court record demonstrating Wilmers initiated contact with Yeager and thus has failed to show any error by the bankruptcy court in failing to find mutual combat based on the state court's factual findings.[5]

Moreover, the Court disagrees with Yeager's implication that the state court's statement that it was "unlikely that Plaintiff said nothing to Defendant prior to Defendant's initial push" requires the bankruptcy court to find mutual combat or provocation.[6] There is no context provided from which to determine what the state court believed Wilmers possibly may have said to Yeager. The bankruptcy court was not required to find either mutual combat or provocation from that vague statement of the state court alone and was permitted to hold further hearings to determine what, if any, statements were made and whether they could reflect mutual combat or provocation. *See Sanderson Farms*, 299 F. App'x at 505-06. Having done so, the bankruptcy

---

[5] Yeager does not address here whether the evidence received at trial before the bankruptcy court would have been sufficient to demonstrate mutual combat, and he instead complains only about the bankruptcy court not properly crediting the state court's findings of fact.

[6] Yeager only references mutual combat in that argument, but this Court nevertheless considers provocation as well for the sake of completeness.

court properly determined that "there was no testimony at the trial before this Court implying that the Plaintiff provoked the Debtor." (Doc. 1-2, PageId 17). Yeager has not shown otherwise.

Accordingly, this Court finds the bankruptcy court did not err in these respects.

**B. Second Issue on Appeal**

Yeager contends that the bankruptcy court failed to take into account equitable considerations in determining whether the debt is dischargeable under § 523(a)(6). (Doc. 6, PageId 36-38). This Court disagrees.

Yeager's first argument is the same as that raised above in regards to mutual combat and provocation, except that here he emphasizes the fact that § 523 should be construed liberally in favor of the debtor. As explained above, the state court's factual findings do not support Yeager's argument. Further, the bankruptcy court also explicitly considered the lack of testimony at trial as to self-defense, mutual combat, and provocation, and found no "credible evidence that such mitigating factors were present in this case." (Doc. 1-2, PageId 16). The bankruptcy court also placed particular emphasis on the fact that Yeager had multiple opportunities to end the altercation. Clear error has not been demonstrated as to the factual findings, and a court is not required to find mutual combat or provocation where, as here, the facts did not support such a finding. .

Yeager's second argument is that the bankruptcy court should have, but did not, consider that Yeager had statute of limitations and res judicata defenses that he could have (but did not) raise in the underlying state court proceedings or on appeal. It, however, is not this Court's or the bankruptcy court's responsibility to decide the applicability of such waived defenses in the underlying state court action. Therefore, the failure to consider what potential defenses could

have been raised in the state court action or to speculate on the possible outcome of those defenses in that state court action does not constitute reversible error.

Yeager's third and fourth arguments are that the bankruptcy court erred in not considering that Yeager never was charged with a crime or the fact that the state court did not impose punitive damages, which he contends mitigates his degree of culpability.  His argument is essentially one for application of the doctrine of collateral estoppel.  Given that the burdens of proof for being charged with a crime (beyond a reasonable doubt) or for an award of punitive damages in Ohio (clear and convincing evidence) are higher than the burden of proof required under § 523(a)(6) (preponderance of the evidence), a determination that the evidence does not meet the heightened standards does not demonstrate that the evidence also failed to meet the lesser burden of proof under § 523(a)(6).  *In re Michael Lane Painter*, 285 B.R. 662, 667-68 (Bankr. S.D. Ohio 2002).  Collateral estoppel thus does not apply.  *Id.*  Further, there is no other indication in the record as to why criminal charges were not pursued, and the Court declines to speculate.  Accordingly, the bankruptcy court did not commit reversible error in either respect.

### C.  Third Issue on Appeal

Yeager contends that the bankruptcy court improperly found Yeager's action to be willful and malicious.  (Doc. 6, PageId 38-40).  Specifically, he contends that the creditor had to, but did not, prove that Yeager actually intended to harm Wilmers's leg.  (Id., PageId 38-39).  In support, he argues that Wilmers claimed he did not say anything to Yeager and had no idea why he would have been attacked, that Yeager acted alone, that the two had no previous interaction, that Yeager testified the altercation started because Wilmers' girlfriend had attempted to steal liquor bottles, that Yeager was never charged with a criminal offense for assault, and that the state court

10

refused to award punitive damages. (Id., PageId 39). This Court disagrees with Yeager's argument.

The standard for willfulness and maliciousness is set forth above and incorporated here. Further, the Supreme Court has determined that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "The (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* Contrary to Yeager's argument, *Geiger* does not stand for the proposition that the debtor must intend to cause the precise injury that resulted (i.e., a leg injury).

Upon review, this Court concludes that the bankruptcy court was correct in its determination of willfulness and maliciousness. The state court found Yeager liable for the intentional tort of battery. As the bankruptcy court thoroughly and accurately explained, the factual record shows that Yeager made contact with Wilmers three separate times, two of which were outside the iron-gated door and one of which was sufficiently forceful to knock Wilmers to the ground. Yeager had several opportunities to end the altercation with Wilmers but did not do so. The preponderance of the evidence supports the finding that Yeager intended all three contacts with Wilmers and intended his contact with Wilmers to cause injury to Wilmers or was substantially certain that injury would follow.[7]

Further, as explained previously, the bankruptcy court correctly considered whether there was just cause or excuse for Yeager to continue the altercation. As the bankruptcy court explained and as this Court explained above, the state court's factual findings and the bankruptcy court's additional factual findings demonstrated the absence of just cause or excuse. That

---

[7] As explained previously, the bankruptcy court's determination is consistent with the factual findings of the state court.

Yeager was not charged with a crime and did not have punitive damages awarded against him does not negate a finding of maliciousness because, as previously explained, the burden of proof under § 523(a)(6) is lower than the burdens of proof for criminal charges or punitive damages.

Accordingly, this Court finds that the bankruptcy court did not err in these respects.

## IV.    CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the judgment of the bankruptcy court. This matter shall be closed.

**IT IS SO ORDERED**.

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT